JAP:TJS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

# M10-1507

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

SIDY M. DIALLO,

            Defendant.

- - - - - - - - - - - - - - - -X

AFFIDAVIT IN SUPPORT OF
REMOVAL TO THE SOUTHERN
DISTRICT OF INDIANA

(Fed. R. Crim. P. 5(c))

EASTERN DISTRICT OF NEW YORK, SS:

        DANNY DIRIENZO, being duly sworn, deposes and says that he is a Special Agent with the United States Secret Service ("USSS"), duly appointed according to law and acting as such.

        Upon information and belief, on or about December 21, 2010, an arrest warrant was issued by the United States District Court for the Southern District of Indiana, commanding the arrest of the defendant SIDY M. DIALLO for Conspiracy to Use One or More Counterfeit Access Devices, in violation of Title 18, United States Code, Section 1029(a)(1) and (b)(2).

        The source of your deponent's information and the grounds for his belief are as follows:

        1.    On or about December 21, 2010, an arrest warrant was issued by the United States District Court for the Southern District of Indiana, commanding the arrest of the defendant SIDY M. DIALLO for Conspiracy to Use One or More Counterfeit Access Devices, in violation of Title 18, United States Code, Section 1029(a)(1) and (b)(2).  A copy of the arrest warrant and complaint are attached.

2.   As part of an ongoing investigation, law enforcement agents located in Indiana have received information from a Cooperating Defendant (CD #1).  As detailed in the attached complaint, CD #1 indicated that he bought re-encoded credit cards from an individual he knew as "Sidy" or "Mo."  CD #1 further indicated that he paid for these cards by, among other things, sending money orders to "Sidy."  During the course of interviews, CD #1 showed law enforcement agents a text message which read "Sidy Diallo, 55-25 98th Place, Apt 2B, Corona, NY 11368" and indicated that CD #1 used that information as the recipient of the money orders pursuant to "Sidy's" instructions.

3.   Law enforcement agents then conducted database searches and determined that an individual named SIDY M. DIALLO lives at 55-25 98th Place, Apartment 2B, Corona, NY 11368.

4.   In addition, law enforcement agents located a copy of a New York State driver's license for SIDY M. DIALLO showing the same address.  CD #1 identified the individual in the driver's license photo as the "Sidy" or "Mo" whom he had bought re-encoded credit cards from.

5.   On December 22, 2010, I and other law enforcement agents went to 55-25 98th Place, Corona, New York.  Agents entered the building and knocked on the door to Apartment 2B. The defendant answered the door.  Agents recognized the defendant and placed him under arrest.  Pursuant to a search warrant issued by Magistrate Judge Robert M. Levy on December 20, 2010, agents searched the residence and, among other things, located a New

2

York State driver's license with a picture of the defendant and the name SIDY M. DIALLO.  In addition, I've reviewed the photo of SIDY M. DIALLO identified by CD #1 and the defendant appears to be the same individual depicted in that photograph.

WHEREFORE, it is requested that the defendant SIDY M. DIALLO be removed to the Southern District of Indiana so that he may be dealt with according to law.

_____
Danny Dirienzo
Special Agent
United States Secret Service

Sworn to before me this
22nd day of December, 2010

_____
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

3

Warrant for Arrest          Bradley P. Shepard, Assistant United States Attorney Telephone No. (317) 226-6333

# United States District Court

### <u>SOUTHERN</u>          DISTRICT OF          <u>INDIANA</u>

UNITED STATES OF AMERICA
V.
SIDY M. DIALLO

**WARRANT FOR ARREST**
**SEALED**

**CAUSE NUMBER:**  1:10-mj-600

To:    The United States Marshal
and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest ____SIDY M. DIALLO____ and bring him or her forthwith
to the nearest magistrate to answer a(n)

_ Indictment  _ Information  _X_ Complaint  _ Order of Court  _ Violation Notice  _ Probation Violation Petition

charging him or her with (brief description of offense)

knowingly and w/intent to defraud, conspired to use one or more counterfeit access devices

in violation of Title _18_ United States Code, Section(s) _1029(a)(1)&(b)(2)_

Kenneth P. Foster
Name of Issuing Officer

United States Magistrate Judge
Title of Issuing Officer

December 21, 2010 Indianapolis, Indiana
Signature of Issuing Officer          Date and Location

(By) Deputy Clerk

by
Name of Judicial Officer

Bail fixed at $ _____

| RETURN | | |
|---|---|---|
| This warrant was received and executed with the arrest of the above-named defendant at _____ | | |
| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
| DATE OF ARREST | | |

# United States District Court

## SOUTHERN DISTRICT OF INDIANA

UNITED STATES OF AMERICA

v.

SIDY M. DIALLO

**CRIMINAL COMPLAINT**
SEALED
CASE NUMBER: 1:10-mj-600

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. In or about December 2010, within the Southern District of Indiana and elsewhere defendant did, (Track Statutory Language of Offense)

knowingly and w/intent to defraud, conspired to use one or more counterfeit access devices

in violation of Title 18, United States Code, Sections 1029(a)(1)&(b)(2). I further state that I am a Special Agent and that this complaint is based on the following facts:

See ATTACHMENT C incorporated herein by reference

Continued on the attached sheet and made a part hereof.

_Matthew H. Lake_

Sworn to before me, and subscribed in my presence

December 21, 2010
**Date**

at Indianapolis, Indiana
**City and State**

Kennard P. Foster, U.S. Magistrate Judge
**Name and Title of Judicial Officer**

**Signature of Judicial Officer**

## ATTACHMENT C

I, Matthew H. Lake, being first duly sworn, depose and state as follows:

### VIOLATIONS OF FEDERAL LAW

1.     This affidavit is being submitted to establish probable cause that

Sidy Diallo, and others known and unknown, has violated:

        a.     Title 18, United States Code, Section 1029(a)(1) & (b)(2),

            Access Device Fraud.

### AFFIANT'S BACKGROUND

2.     I have been employed with the United States Secrete Service

(USSS) since September of 2009.  I am currently assigned to the Indianapolis

Field Office of the USSS where my duties include investigations of identity theft,

false identification, fictitious financial instruments (including counterfeit currency),

money laundering, wire fraud, bank fraud, and access device fraud. I have also

received training in identifying counterfeit United States currency from the USSS.

Prior to my committed service with the USSS, I was a police officer/detective in

the State of Georgia from 2002 to 2009. As a police officer/detective, I conducted

numerous investigations that led to prosecutions and convictions involving felony

white collar cases. I am a Federal Law Enforcement Officer of the United States

and I am empowered to conduct investigations, execute warrants, and to make

arrests for offenses committed against the United States, enumerated in, but not

limited to, Title 18 United States Code.

3.     Your Affiant has participated in the investigation of the offenses

described within this affidavit.  The statements contained in this affidavit are

1

based in part on information provided by, and conversations held with, Special Agents of the United States Secret Service, Indianapolis Field Office and New York Field Office; Inspectors of the United States Postal Inspection Service; Detectives of the Greenfield Police Department; bank investigators; Wal-Mart asset protection officers; government witnesses; documents; and on your Affiant's experience and background as a Special Agent of the United States Secret Service. This statements contained in this affidavit are also based in part on information provided by a Cooperating Defendant (CD #1). Through this investigation, CD #1 has been found to be credible and reliable and the information provided by CD #1 has been corroborated by consensually monitored telephone calls, and investigative tactics independent of CD #1. CD #1 has pending charges in the U.S. District Court for the Southern District of Indiana. Although CD #1 is undoubtedly hoping for consideration on the pending criminal charges, no promises have been made by law enforcement. Since this affidavit is being submitted for the purpose of securing a warrant for the arrest of Sidy Diallo, your Affiant has not included each and every fact that has been revealed through the course of this investigation. Your Affiant has set forth only the facts that are believed to be necessary to establish the required foundation for the issuance of the requested Warrant.

4. The purpose of this affidavit is to set forth probable cause for a criminal complaint charging Sidy Diallo with violations of Title 18, United States Code, Section 1029(a)(1) & (b)(2), Access Device Fraud.

2

## SUMMARY OF AFFIDAVIT

5.      I submit that the facts set forth in this affidavit establish:

a.  There is probable cause to believe Sidy Diallo and others known and unknown, knowingly violated Title 18 United States Code, Section 1029(a)(1) & (b)(2), in that, as detailed below, on or about December 2010 Sidy Diallo conspired with CD #1 to knowingly and with intent to defraud, use one or more counterfeit access devices.

## REQUIREMENTS OF FEDERAL LAW

6.      a.      Title 18, United States Code, Section 1029(a)(1)&(b)(2) makes it illegal to knowingly and with intent to defraud, conspire to produce, use, or traffic in one or more counterfeit access devices.  Title 18, United States Code, Section 1029(e)(2) defines a "counterfeit access device" as any access device that is counterfeit, fictitious, altered, or forged, or an identifiable component of an access device or a counterfeit access device.

## FACTS ESTABLISHING PROBABLE CAUSE THAT CRIMES WERE COMMITTED

7.      On December 9, 2010, CD #1 was arrested by the Greenfield (IN) Police Department at Wal-Mart, 1965 N. State St, Greenfield, IN for forgery.  The charges stemmed from CD #1's unauthorized use of a MasterCard account number to purchase gift cards at the same Wal-Mart on or about September 14, 2009.  On December 9, 2010, a search of CD #1 incident to arrest located the following items: $633 in U.S. currency; one Chase Bank debit card embossed with CD #1's name, and one pre-paid Netspend credit card.  On December 9,

3

2010, a consent search of CD #1's rental vehicle located the following items: eighty-seven (87) $100 gift cards still in the packages; six (6) unpackaged gift cards (because the gift cards are unpackaged, the value of the gift cards is unknown at this time); and forty-seven (47) pre-paid Netspend credit cards located in the rental vehicle.

8. On December 10, 2010, I responded to the Greenfield Police Department to assist with this investigation. SA Danny DiRienzo examined the forty-seven pre-paid Netspend credit cards found in CD #1's vehicle, and using a magnetic strip reader, confirmed that all forty seven pre-paid Netspend credit cards had been re-encoded with account numbers that were different from the account numbers embossed on the front of the credit cards. SA Danny DiRienzo also examined the Chase Bank debit card bearing CD #1's name and determined that it had been re-encoded with Visa debit card number XXXX-XXXX-XXXX-0371. SA Danny DiRienzo subsequently learned that Visa debit card number XXXX-XXXX-XXXX-0371 was issued by SunTrust Bank, and that this account had been compromised. A review of transaction receipts from CD #1's activity at the Wal-Mart in Greenfield, IN on December 9, 2010, revealed that CD #1 had attempted to make a $250 purchase using this Visa debit card number, but that transaction was denied. According to SunTrust Bank, the transaction was denied because the legitimate account holder has a block in place for transactions exceeding $200. Since CD #1's arrest on December 9, 2010, Wal-Mart asset protection officers have determined that CD #1 made purchases at the Wal-Mart in Greenfield, IN on September 4, September 12, October, 22, and December 9,

4

2010. On those dates CD #1 used a total of sixty-five (65) different access devices to make $16,457.97 in purchases.[1] In subsequent interviews with CD # 1, CD #1 admits that all purchases made at the Greenfield, IN Wal-Mart were made using re-encoded credit or debit cards. The majority of the purchases made by CD #1 were for gift cards, however, on October 22, 2010, CD #1 purchased an Apple IPAD, serial number SV5041VW5Z38.

9.      On December 10, 2010, Myself, Detective J.D. Fortner of the Greenfield (IN) Police Department and SA Danny DiRienzo interviewed CD #1 at the Hancock County Jail in Greenfield, IN. SA Danny DiRienzo advised CD #1 of his Miranda Warnings, which CD #1 indicated he understood and voluntarily waived. CD #1 stated that he knew that the Chase Bank debit card bearing his name had been re-encoded with an account number that did not belong to CD #1. CD #1 further stated that on December 9, 2010, he had not only used the re-encoded Netspend credit cards to purchase gift cards at the Wal-Mart in Greenfield, IN, but CD #1 admitted to travelling to two additional Wal-Mart's around Indianapolis, IN to successfully perpetrate the same scheme.

10.     On December 9, 2010, SA Danny DiRienzo selected two of the re-encoded Netspend credit cards found on CD #1's person or in CD #1's vehicle. SA Danny DiRienzo confirmed with Netspend that both of those credit cards were originally stolen from Speedway Gas Station, 5735 Maple Canyon Ave, Columbus, OH (Netspend was unable to determine the date of theft).

---

[1] CD #1 also visited the Wal-Mart in Greenfield, IN on November 13, 2010, however transaction information was not available for that date as of the time of this writing.

11.     On December 13, 2010, The U.S. District Court for the Southern District of Indiana issued a criminal complaint and arrest warrant charging CD #1 with a violation of Title 18 U.S.C. Section 1029(a)(1), access device fraud.

12.     On December 14, 2010, Special Agents of the U.S. Secret Service, Indianapolis Field Office arrested CD #1 following CD #1's release from the Hancock Indiana County Jail.  After meeting with the Court appointed Federal Defender and making his initial appearance before U.S. Magistrate Judge Kennard P. Foster in the U.S. District Court for the Southern District of Indiana, CD #1 agreed to cooperate with this investigation.

13.     On December 14, 2010 and December 15, 2010 SA William Kennedy and SA Danny DiRienzo interviewed CD #1.  CD #1 related the following details:

a. CD #1 stated that a person whom he knows as "Mo" or "Sidy" is the source of the counterfeit credit cards that CD #1 used in Indiana on December 9, 2010;[2]

b. CD #1 has obtained counterfeit credit cards from Diallo and used those cards on approximately six other occasions dating back to April 2010;

c. CD #1 has met Diallo on several occasions in Columbus, OH and in New York.  CD #1 believes that Diallo lives in New York;

d. CD #1 stole the Netspend pre-paid credit cards that were re-encoded by Diallo from various Speedway Gas Stations in Columbus, OH;

---

[2] As described in Paragraph 15, CD #1 positively identified the source of the counterfeit credit cards as Sidy M. Diallo.  Although it was not until December 15, 2010 that law enforcement confirmed Diallo was the source of the counterfeit credit cards, for simplicity Diallo will be referred to throughout this affidavit by his true identity.

e. CD #1 pays Diallo $60 per counterfeit credit card and has always bought 50 counterfeit credit cards at a time, for a total of $3,000. Once CD #1 has obtained the re-encoded credit cards (sometimes obtained directly from Diallo, but more recently obtained through an intermediary in Columbus, OH whom CD #1 only knows as "Edris") CD #1 uses those cards to purchase gift cards.

f. Once the gift cards are obtained, CD #1 disposes of the cards in one of the following ways. One method is that CD #1 sells the gift cards for cash (CD #1 most frequently sells the gift cards for 50% of face value). CD #1 then uses the proceeds from the sales to pay Diallo his "cut," which is typically sent to Diallo via in the form of U.S. Postal Money Order sent via the mails or via interstate wire communication (typically via Western Union or Moneygram). Another method is that CD #1 sends via U.S. Mail a portion of the gift cards to Diallo. CD # 1 mails the packages to Diallo at 5525 98th Place, Apt 2B, Corona, NY 11368.

g. CD #1 also indicated that CD #1 sends Diallo the Netspend credit cards via the U.S. Postal Service to be re -encoded again with new, stolen credit card numbers. CD #1 stated that he mails the Netspend credit cards to Diallo at 5525 98th Place, Apt. 2B, Corona, NY 11368.

h. CD #1 voluntarily displayed cellular telephone numbers 917-353-8730, 347-239-5294, and 347-776-7056 saved in the address book under various versions of "Sidy." CD #1 also voluntarily displayed the following text message sent on April 28, 2010 from "Sidy", telephone number 347-776-7056

7

which read "Sidy Diallo, 55-25 98th Place, Apt 2B, Corona, NY 11368". CD #1 stated that is the address to which CD #1 mails payment and credit cards for re-encoding to Diallo;

    i.  CD #1 currently owes Diallo $3,000 in payment for the 50 (fity) credit cards that CD #1 used in Indiana on December 9, 2010;

    j.  CD #1 sent Diallo the Chase debit card bearing CD #1's name in the last U.S. Postal Service shipment sent to Diallo sometime in November 2010. Contained in that shipment were 50 (fifty) Netspend credit cards to be re-encoded by Diallo, a $3,000 U.S. Postal Money Order for payment on previously purchased re-encoded credit cards, and CD #1's Chase debit card. CD #1 stated that during a telephone conversation, Diallo asked CD #1 if CD #1 had any credit cards with CD #1's name on it that CD #1 did not use. According to CD #1, Diallo suggested that CD #1 send Diallo such a card for re-encoding since it would be easier for CD #1 to use a re-encoded credit card bearing CD #1's name;

    k.  On either Thursday or Friday, December 2 or December 3, 2010, CD #1 met "Edris" in the parking lot of an apartment complex in Columbus, OH and retrieved the 50 (fifty) re-encoded Net spend credit cards along with the Chase debit card bearing CD #1's name;

    l.  CD #1 voluntarily displayed the numbers of two U.S. Postal Money Orders that CD #1 had purchased to pay Diallo. Those numbers were

1831-321-4365 and 1796-665-0127 and were stored in CD #1's cellular telephone.[3]

14.    On December 14, 2010, CD #1 placed a consensually monitored telephone call to Diallo at telephone number 347-239-5294. During that telephone call Diallo and CD #1 talked about the money that CD #1 owes Diallo. CD #1 asks, "I don't know how you want me to do with the money?" and Diallo replies "you can send it ($3,000) today or tomorrow.".

15.    On December 15, 2010, SA Danny DiRienzo obtained a copy of a New York driver's license photo for Sidy M. Diallo. CD #1 was shown the New York Driver's license photo and positively identified Diallo as the person whom CD #1 knows as "Mo" or "Sidy" and as the source of the counterfeit credit cards that CD #1 has used. On the same date, SA Danny DiRienzo conducted an National Crime Information Center (NCIC) criminal history query of Sidy M. Diallo which revealed that on March 3, 2009, Diallo was arrested by the Fort Lee (NJ) Police Department and charged with one count of forgery, two counts of wrongful impersonation, one count of credit card theft, one count of possession of marijuana/hash under, and one count of possession of drug paraphernalia. The NCIC criminal history for Diallo further indicated that Diallo was adjudicated guilty for one count of receiving stolen property and that the remaining  charges were dismissed, and on June 21, 2010. Diallo was sentenced to one year of

---

[3] CD #1 estimated that between approximately April and November 2010, CD #1 purchased approximately thirty (30) U.S. Postal Money Orders made payable to Diallo. CD #1 stated that all of those money orders were sent via U.S. Mail to Diallo at 5525 98th Place, Apt. 2B, Corona, NY. CD #1 stated that he purchased all of those money orders at the U.S. Post Office located at 161 Granville Rd, Columbus, OH. On December 16, 2010, U.S. Postal Inspector J.J. De St. Jean contacted the supervisor at the U.S. Post Office located at 2469 E Dublin Granville Rd, Columbus, OH (CD #1 had the address wrong, however this location is near the intersection of 161st St. and Granville Rd) who confirmed personal knowledge of CD #1 and stated that CD #1 has purchased numerous money orders at that location.

probation. On December 17, 2010, SA Danny DiRienzo reviewed a copy of the police report relating to the arrest of Sidy M. Diallo in Fort Lee, NJ on March 3, 2009. On that date Diallo was found in possession of thirty-one (31) credit cards, all of which had been re-encoded with stolen access device account information. Three (3) of the thirty-one (31) re-encoded credit cards were embossed with the name of Sidy M, Diallo.

16.     On December 15, 2010 CD #1 placed a consensually monitored telephone call to Diallo at telephone number 347-239-5294.   A portion of that conversation is detailed as follows:

CD #1: "I'm gonna need a hundred (re-encoded credit cards) but I want you to give me a deal because I cannot really pay like 6 G's ($6,000) for the order so if you can work anything out, let me know (inaudible) I can send you all the money together (meaning the $3,000 CD #1 already owes Diallo plus the cost of the additional 100 re-encoded credit cards that CD #1 is ordering)"

Diallo: Who, who, who, who do you need the whole (inaudible) for? The whole hundred, for who?

CD #1: My boy and this other guy I talked to, some guy named (inaudible) from Ghana.

Diallo: ...That's like you said, like Friday right?

CD #1: Yeah, but if you, it depends on the money, if you want me to....do you got it (the credit card numbers) right now, or do you want me to call them right now and tell them if they are ready tomorrow or if you, it's up to you, however you want me to do it man, you know.

10

Diallo: Can you do the thing Moneygram, can you do a Moneygram thing?

CD #1: What you want me to wire the money to Moneygram?

Diallo: Yeah

CD #1: OK....three thousand ($3,000) only?

Diallo: Yeah, and when you're ready for the rest (meaning the re-encoded credit cards) let me know.

CD #1: I'm ready for the rest, that's what I'm telling you, I want to do it all together (meaning pay the $3,000 CD #1 already owes Diallo at the same time CD #1 pays for the additional 100 re-encoded credit cards that CD #1 is ordering).

Diallo: So how much you want, what you mean you'd like to deal, how much you want to pay for it (the 100 re-encoded credit cards)?

CD #1: I want a hundred, how much can you give me for the hundred?

Diallo: Like fifty-five.

CD #1: Fifty-five?

Diallo: Yeah.

CD #1: How much is fifty-five times, fifty-times times hundred, how much is that?

Diallo: Five fifty.

CD #1: Five thousand, five hundred?

Diallo: Um hum (replying in the affirmative).

11

The conversation continues with the two agreeing on a price of $5,300 for 100 re-encoded credit cards. Later in the conversation, CD #1 asks Diallo if "the numbers" (meaning the stolen credit card numbers) are "good" and Diallo replies "Um-hum". CD #1 then asks Diallo if the credit card numbers are the same as "last week" (meaning the re-encoded credit cards that CD #1 used in Indiana on December 9, 2010) or "which one is better" and Diallo responds "the same."

17.     On December 16, 2010, SA Danny DiRienzo reviewed a border crossing report filed by U.S. Customs and Border Patrol on May 11, 2009 at the Detroit Ambassador Bridge border crossing in Detroit, MI.  The report reveals that four passengers were in the vehicle at that checkpoint.  Those passengers included Sidy M. Diallo, 55 25 98th Pl, Apt. 2B, Corona, NY 11368 (the Subject Premisis), telephone number 718-699-3267, CD #1 and Ousmane Camara.  A photograph of Sidy M. Diallo (which is a different photograph than the driver's license photograph identified by CD #1) is attached to that report.  SA Danny DiRienzo viewed both photographs and is of the opinion that the Sidy M. Diallo stopped at the border crossing on May 11, 2009 along with CD #1 is the same person depicted in the driver's license photograph that CD #1 identified as being the source of the counterfeit credit cards.

18.     On December 16, 2010 U.S. Postal Inspector J.J. De St. Jean confirmed that the two U.S. Postal Money Order numbers provided by CD #1 (as referenced in paragraph #13 j of this affidavit) were purchased in Columbus, OH (CD #1's city of residence) on April 5, 2010, each in the amount of $1,000.00. The purchases of those money orders were made using U.S. Currency.  Images

12

of those two U.S. Postal Money Orders revealed that they were made payable to Sidy Diallo, 55-25 98th Place, Corona, NY.   Records reveal that the U.S. Postal Money Orders were endorsed by a Sidy Diallo.

    19.    On December 16, 2010, SA Danny DiRienzo contacted a representative from Western Union corporate security.  The following details Western Union records relating to Sidy M. Diallo:

    a.    On March 16, 2010 Sidy M. Diallo wired $915.99 (including fees) via Western Union to Madelona Condrus in Bucharest, Romania.  The wire transfer was initiated at the Western Union Pay O Matic #206, located at 2356 Grand Concourse, Bronx, NY by Sidy M. Diallo, 55 25 98th Place, Apt. 113, Corona, NY 11368, telephone number 347-776-7056 (one of the telephone numbers provided by CD #1 for Diallo).  This wire transfer was one (1) of thirty-four (34) wire transfers sent from various locations in the United States to Madelona Condrus in Bucharest, Romania between March 12, 2010 and April 22, 2010.

    b.    On August 25, 2010, Sidy M. Diallo wired $915.99 (including fees) via Western Union to Ionut Tudor in Craiova, Romania.  The wire transfer was initiated at the Western Union Pay O Matic #227, located at 2441 Jerome Ave, Bronx, NY by Sidy M. Diallo, 55 25 98th Place, Apt. 113, Corona, NY 11368, telephone number 347-776-7056.  This wire transfer was one (1) of forty-two (42) wire transfers sent from various locations in the United States to Ionut Tudor in Caiova, Romania between August 8, 2010 and September 1, 2010.

13

20.     Based on my experience conducting access device fraud investigations, Eastern European countries such as Romania and the Ukraine are common areas for the sales of access device account information. Based upon my training and experience it is a common scheme for a person in Eastern Europe to obtain large quantities of access device account numbers (either by using computer hardware that manually records and stores the information from the magnetic strip of an access device commonly referred to as "skimming" or by accessing databases and stealing access device information commonly referred to as "hacking") and then post an internet site advertising the sale of those stolen access device account numbers. It is common practice for a person that wishes to purchase the stolen access device account numbers to communicate with the seller via internet chat rooms, exchange price and wiring instructions, wire the money to Eastern Europe to pay for the stolen access devices, and then receive the stolen access device data via electronic mail. Based on my training and experience, the conduct described in this paragraph is consistent with the purchase of stolen access device information.

21.     Also based upon my training and experience, I know that certain devices and hardware are necessary to re-encode access devices. This hardware typically includes computers, USB drives or other electronic storage media, devices capable of reading and programming magnetic strips, and programs and other software used in conjunction with the re-encoding devices.

14

## CONCLUSION

22.     Therefore, on the facts and for the reasons set forth above, your

affiant submits that there is probable cause to believe that a violation of Title 18

USC §1029(a)(1) has been committed by Sidy M. Diallo.

23.     Given the confidential nature of this continuing investigation,

Respectfully request this Affidavit, and the application to which it is attached, be

maintained under seal until this Court orders otherwise.

Matthew H. Lake
Special Agent
United States Secret Service
Indianapolis Field Office


Subscribed and sworn to before me this 21st day of December 2010.

The Honorable Kennard P. Foster
United States Magistrate Judge
Southern District of Indiana

15